[No. 18338-6-III.   Division Three.   August 17, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. TODD RYAN TODD, *Appellant*.

---

*George M. Ahrend,* for appellant.

*Andrew J. Metts III, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

SWEENEY, J. — Fingerprint evidence alone is sufficient to support a conviction if the trier of fact can reasonably infer that the fingerprint could have been impressed only at the time of the crime.[1] Officers found a methamphetamine "box lab" in an automobile. Todd Todd's fingerprints were on four different items in the "box lab." Mr. Todd's fingerprints were the only evidence tying him to the "box lab." The first question here is whether the fingerprints are sufficient to convict Mr. Todd of manufacturing methamphetamine. We conclude that they are and affirm the conviction for manufacturing.

The second question is whether the same evidence was sufficient to convict Mr. Todd of possession with intent to deliver. To convict for possession with intent to deliver, the State must present evidence of sales or intent to sell narcotics and of possession.[2] Mr. Todd possessed only residue and raw materials to manufacture methamphetamine —nothing he could sell. We conclude, therefore, that the evidence is insufficient and reverse the conviction for possession with intent to deliver.

## FACTS

Officers executed a search warrant at a residence in Spokane. No one was home. But a stolen Chevrolet Blazer was parked under a carport.

The Blazer housed a methamphetamine "box lab." A "box lab" holds materials and chemicals used to manufacture methamphetamine. Police also found matchbook covers. Certain types of methamphetamine manufacturing require the phosphorous found in matches.

---

[1] *State v. Bridge*, 91 Wn. App. 98, 100-01, 955 P.2d 418 (1998).

[2] *State v. Hagler*, 74 Wn. App. 232, 235-37, 872 P.2d 85 (1994).

Police seized a flask, two glass jars, and a large, three-liter separatory funnel from the "box lab." The flask contained a red phosphorus residue. One jar contained a methamphetamine-producing compound and unfinished, liquid-form methamphetamine that had to be converted into powder-form methamphetamine for use. The large funnel contained chemical residue produced in the creation of methamphetamine.

Mr. Todd's fingerprints were on the flask, jars, and funnel. The methamphetamine manufacture had not been completed. Officers also found a triple beam scale during their search.

The State charged Mr. Todd with manufacture of methamphetamine and possession of methamphetamine with intent to deliver, RCW 69.50.401(a). The jury convicted Mr. Todd of both charges.

## DISCUSSION

### MR. TODD'S BRIEF

The State asks us to strike Mr. Todd's statement of the case.[3] It contends that every statement is contaminated by argument and is not a fair recitation of the facts.

RAP 10.3(a)(4) requires that every brief contain "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument." Sanctions may be appropriate for a violation of RAP 10.3.[4] But sanctions are appropriate only if the requesting party can show that he or she was prejudiced by the other party's violation of the RAPs.[5]

Mr. Todd's statement of the case is argumentative. But

---

[3] RAP 10.3(a)(4).

[4] RAP 10.7; *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998), *review denied*, 137 Wn.2d 1017 (1999).

[5] *Barnes v. Washington Natural Gas Co.*, 22 Wn. App. 576, 577 n.1, 591 P.2d 461 (1979).

we are nonetheless able to sift the wheat from the chaff and so there is no prejudice.

## SUFFICIENCY OF THE EVIDENCE

Mr. Todd challenges the sufficiency of the evidence for his convictions for manufacture of methamphetamine and possession of methamphetamine with intent to deliver.

■ Standard of Review. After viewing the evidence in a light most favorable to the State, we must be able to conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] Mr. Todd admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom by claiming the evidence is insufficient.[7] We defer to the trier of fact on questions of conflicting testimony, witness credibility, and the persuasiveness of the evidence.[8]

■■ Circumstantial evidence is as probative and reliable as direct evidence.[9] But the circumstantial evidence must be consistent with the hypothesis that the defendant is guilty, and inconsistent with any hypothesis or theory tending to establish innocence.[10] And "[w]hen an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow 'more likely than not' from proof of the basic fact."[11]

Fingerprint Evidence. It is undisputed that Mr. Todd's fingerprints were · on four different items in the methamphetamine "box lab." Mr. Todd contends the evi-

---

[6] *State v. Potts*, 93 Wn. App. 82, 86, 969 P.2d 494 (1998); *Bridge*, 91 Wn. App. at 100.

[7] *State v. Walton*, 64 Wn. App. 410, 415, 824 P.2d 533 (1992).

[8] *Id.* at 415-16.

[9] *Potts*, 93 Wn. App. at 86; *Bridge*, 91 Wn. App. at 100.

[10] *State v. Sewell*, 49 Wn.2d 244, 246, 299 P.2d 570 (1956).

[11] *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994) (citing *County Court v. Allen*, 442 U.S. 140, 165, 167, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)).

dence is insufficient to support either crime because he was convicted based only on his fingerprints.[12]

■ "Fingerprint evidence alone is sufficient to support a conviction where the trier of fact could reasonably infer from the circumstances that it could only have been impressed at the time the crime was committed."[13] But "[w]hen fingerprint evidence is the only evidence linking a defendant to a crime and the fingerprint is found on a moveable object, the State must show that the fingerprint could have been impressed only during the commission of the crime, and not earlier."[14] Thus, it is essential that the State point to sufficient evidence, as reflected in the record, that the fingerprinted object was generally inaccessible to the defendant at a previous time.[15]

The parties rely on *State v. Bridge* and *State v. Lucca*. Both "fingerprint only" cases provide limited help. We distinguish moveable objects generally accessible to the public, like those items in this case, from fixed objects generally not accessible to the public, like those in *Lucca*.[16] The fingerprint in *Lucca* was impressed on a permanent glass window broken during the crime.[17] The fingerprint in *Bridge* was found on only one movable object—a recently purchased item that still had the price tag on it.[18]

---

[12] *Bridge*, 91 Wn. App. at 100-01.

[13] *State v. Lucca*, 56 Wn. App. 597, 599, 784 P.2d 572 (1990).

[14] *Bridge*, 91 Wn. App. at 100-01 (citing *Mikes v. Borg*, 947 F.2d 353, 356-57 (9th Cir. 1990) and *Lucca*, 56 Wn. App. at 599-600).

[15] *Bridge*, 91 Wn. App. at 100.

[16] *Id*. at 101.

[17] *State v. Lucca*, 56 Wn. App. 597, 599-602, 784 P.2d 572 (1990) (affirming burglary conviction based on the defendant's fingerprint on a piece of broken glass because there was no evidence that defendant had been to the residence before the burglary); *see also Sewell*, 49 Wn.2d at 246 (reversing burglary conviction because defendant was authorized to enter the burglarized premises and fingerprint on glass from broken window did not prove unlawful entry).

[18] *State v. Bridge*, 91 Wn. App. 98, 99, 955 P.2d 418 (1998) (reversing burglary conviction because the State failed to show that defendant's fingerprint on a store tag on a tool at the burglarized premises was impressed during the burglary, and not before the burglary).

Here Mr. Todd's prints were on four different objects associated with a methamphetamine "box lab." Unlike the object in *Bridge*, the objects had not been recently purchased. And unlike the object in *Bridge*, there was more than one fingerprint.

Manufacture of Methamphetamine. The State had to prove that Mr. Todd manufactured methamphetamine.[19] "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance.[20]

The State argues that an innocent explanation is "much more remote" with fingerprints on two items, "extremely unlikely" with fingerprints on three items, and "nearly impossible" with fingerprints on four different items.[21]

We agree. It was reasonable for the trier of fact to infer that, more likely than not, Mr. Todd manufactured methamphetamine based on his fingerprints.[22] The equipment was used only to manufacture drugs. And Mr. Todd's fingerprints were found on most of the manufacturing equipment.

Possession of Methamphetamine with Intent to Deliver. The State also had to prove that Mr. Todd possessed methamphetamine with the intent to deliver.[23]

*Possession.* Mr. Todd contends that reversal of his conviction for possession with intent to deliver is required by *State v. Spruell.*[24] But *Spruell* is distinguishable. There the only evidence tying the defendant to the drugs was his presence at the house and his "fingerprint on a dish which appeared to have contained cocaine immediately prior to

---

[19] RCW 69.50.401(a).

[20] RCW 69.50.101(p); *In re License of Farina*, 94 Wn. App. 441, 458, 972 P.2d 531 (1999).

[21] Resp't's Br. at 7.

[22] *Hanna*, 123 Wn.2d at 710; *Lucca*, 56 Wn. App. at 599.

[23] RCW 69.50.401(a).

[24] *State v. Spruell*, 57 Wn. App. 383, 385-87, 788 P.2d 21 (1990).

the forced entry of the police."[25] The Court of Appeals reversed. It concluded that this was insufficient to infer the defendant's dominion and control over the drugs.[26]

But here:

- Police discovered a methamphetamine "box lab";[27]

- The "box lab" indicated that this was an ongoing, large-scale operation for methamphetamine manufacture and distribution;[28]

- Four items contained methamphetamine residue or compounds used in the production of methamphetamine;[29]

- Mr. Todd's fingerprints were on all four items.[30]

A trier of fact could reasonably conclude that Mr. Todd possessed methamphetamine.[31]

*Intent to Deliver.* Possession with intent to deliver requires that the defendant have something—that is, that he possess drugs to deliver. Intent to deliver must logically follow as a matter of probability from the evidence presented in addition to possession.[32] Generally, at least one factor, in addition to possession and suggestive of sale, is required to establish an inference of intent to deliver.[33]

Even accepting the State's argument that the "box lab" supported a large-scale operation, there still must have

---

[25] *Id.* at 388.

[26] *Id.* at 388-89.

[27] Report of Proceedings at 58, 91, 96-115, 180.

[28] *Id.* at 56, 102, 120, 155, 175-81.

[29] *Id.* at 100-08, 142-44, 149-56, 171-75.

[30] *Id.* at 58-59, 198-99.

[31] *Potts,* 93 Wn. App. at 86.

[32] *State v. Davis,* 79 Wn. App. 591, 594, 904 P.2d 306 (1995).

[33] *State v. Lopez,* 79 Wn. App. 755, 768, 904 P.2d 1179 (1995) (citing cases); *Hagler,* 74 Wn. App. at 236; *State v. Simpson,* 22 Wn. App. 572, 590 P.2d 1276 (1979) (considering quantity of drugs and nature of packaging to support inference of possession with intent to deliver); *State v. Harris,* 14 Wn. App. 414, 418-19, 542 P.2d 122 (1975) (emphasizing the "compound" of the facts enabled the jury to infer intent to deliver).

been something to deliver. That is, the manufacturing process must have been completed and the methamphetamine must have been on hand to deliver to someone. Here, the methamphetamine manufacturing process was incomplete. Mr. Todd had no drugs to deliver. He could not therefore possess with the intent to deliver.

We affirm Mr. Todd's conviction for manufacture of methamphetamine and reverse his conviction for possession of methamphetamine with intent to deliver.

KURTZ, C.J., and KATO, J., concur.