FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43127-1-II |
| Respondent, | |
| v. | |
| TIMOTHY PAUL WHITTLES, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — A jury found Timothy P. Whittles guilty of first degree malicious mischief - domestic violence. The trial court sentenced Whittles to seven months confinement and imposed legal financial obligations including a $100 contribution to the Kitsap County Expert Witness Fund and a $500 contribution to the Kitsap County Special Assault Unit. Whittles appeals, arguing that (1) there was insufficient evidence to support the jury's verdict, (2) Whittles received ineffective assistance of counsel, and (3) the trial court erred by imposing legal financial obligations unrelated to Whittles's crime. The State properly concedes that the trial court erred by imposing legal financial obligations that are not authorized by statute. Whittles's other arguments fail. Accordingly, we affirm Whittles's conviction and remand to the trial court to correct the judgment and sentence by striking the improper legal financial obligations.

## FACTS

In September 2011, Whittles and Susan Christopher had been dating for approximately six months. Christopher lived at 2412 Seabeck Holly Road Northwest in Kitsap County. On September 20, 2011, Christopher and Whittles had been arguing throughout the evening. At

approximately 9 PM Christopher left her house to visit her sister. Whittles called Christopher several times and demanded that she return to the Seabeck house. At the end of their last conversation, Whittles told Christopher the relationship was over.

Christopher did not want to go home while Whittles was at the house so she decided to wait in a neighbor's driveway until she saw Whittles leave. Whittles left the house in Christopher's truck. When Whittles saw Christopher's car, he tried to block her in her neighbor's driveway. Whittles screamed at Christopher and pounded his fists on the roof of Christopher's car. Christopher drove away and did not return to her house until the next day. When Christopher returned to her home, her truck was dented, the storage shed on the property was damaged, the house's doors and windows were broken, and several items and pieces of furniture inside the house were destroyed.

Whittles went to trial before a jury on one count of first degree malicious mischief and one count of the lesser included offense of third degree malicious mischief. RCW 9A.48.070(1)(a), .090(1)(a). Both charges included domestic violence allegations. RCW 10.99.020.

At trial, Christopher testified to the above facts. During Christopher's testimony, the State asked Christopher why she did not call the police after Whittles attacked her car. Christopher responded that she did not know why she decided not to call the police but that she still had enough respect for Whittles "to not involve him in another police incident." 1 Report of Proceedings (RP) at 85. Defense counsel did not object. Later, when asked what she did between leaving her friend's house and returning home, Christopher responded, "I went and did some shopping and just kind of tried to kill some time. I knew that [Whittles] had an

appointment with Mr. Houser in regards to something else."[1] 1 RP at 87. Defense counsel objected to this second statement and the trial court sustained the objection. Christopher also testified that at the time of trial, her insurance company had reimbursed her approximately $27,000 for the damage done to her property.

Kitsap County Sheriff's Deputy Kenneth H. Mahler testified to the damage that he saw at Christopher's house. Derrick Ingulsrud, a friend of Christopher, also testified that he was with both Whittles and Christopher at different points on the evening in question. Whittles called three witnesses: Barbara Coombs, Russell Spurling, and Kendall Williams. Whittles's witnesses testified that Whittles was at a trailer park on Northwest Mountain View Road at the time Christopher's house was damaged.

The jury found Whittles guilty of first degree malicious mischief and found that Whittles and Christopher were family or household members for the purpose of the domestic violence aggravating factor. The trial court sentenced Whittles to a standard range sentence of seven months total confinement. The trial court also imposed legal financial obligations which included "$100 Contribution-Kitsap County Expert Witness Fund [Kitsap County Ordinance 139.1991]" and "$500 Contribution-Kitsap Co. Special Assault Unit." Clerk's Papers at 39. Whittles timely appeals.

## ANALYSIS

Whittles contends that there was insufficient evidence to support the jury's verdict and that his counsel's assistance was ineffective. Whittles argues that the evidence was insufficient to support the jury's verdict because the State's witnesses offered testimony which conflicted on

---

[1] Houser was the attorney representing Whittles during the malicious mischief trial.

some points and, thus, "the only logical inference to be drawn from the testimony of the State's witnesses is that either they did not witness the same events or their veracity or reliability is insufficient to support a conviction." Br. of Appellant at 3. But Whittles's argument necessarily requires us to reweigh the evidence, which as a reviewing court we may not do, and it fails. Whittles also argues that his counsel's assistance was ineffective because trial counsel failed to request a mistrial after Christopher's remarks about what Whittles characterizes as his criminal history. The record does not support this characterization and Whittles fails to establish either deficient performance or prejudice. Accordingly, his ineffective assistance of counsel claim also fails.

SUFFICIENCY OF THE EVIDENCE

Evidence is sufficient if, when viewed in the light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence or substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify first hand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decision regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

According to Whittles, the evidence presented at trial "does not bear sufficient indicia of reliability to enable a reasonable juror to overcome the presumption of innocence and convict."

Br. of Appellant at 6. But as the State correctly points out, it is the jury's responsibility to resolve conflicting testimony. Whittles concedes as much. Despite this, Whittles maintains that he is not asking this court to reevaluate witness credibility or to resolve conflicting testimony but, instead, "is asking the Court to hold that the State's evidence did not meet minimum criteria of reliability sufficient to support a finding of guilt beyond a reasonable doubt." Reply Br. of Appellant at 2. Whittles's argument does not make clear what the difference is between reevaluating witness credibility and evaluating the reliability of the evidence. The relevant question before us is whether viewed in the light most favorable to the State, the evidence presented establishes the elements of first degree malicious mischief beyond a reasonable doubt. If believed by the jury, Christopher's and Ingulsrud's testimony establishes the necessary elements of the crime. Accordingly, Whittles's sufficiency of the evidence claim fails.

To prove Whittles committed first degree malicious mischief, the State must prove Whittles (1) acted knowingly and maliciously, (2) caused physical damage to the property of another, and (3) caused damage in an amount exceeding $5,000. RCW 9A.48.070(1)(a). Here, Christopher testified that Whittles was angry at her and ended the relationship. She also testified that Whittles was at her house and none of her property had been damaged when she left her house that evening. Finally, Christopher testified that her insurance company had reimbursed her at least $27,000 for the damage done to her property. From Christopher's testimony, the jury could infer that Whittles destroyed Christopher's property out of anger over the end of the relationship.

In addition to Christopher's testimony, Ingulsrud testified that on two occasions he returned to Christopher's house while Whittles was there. On the first occasion, Whittles appeared very upset. When Ingulsrud arrived at the house, he heard "a little crashing around." 1

5

RP at 134. On the other occasion, Whittles was still angry and refused to let Ingulsrud into the house. From the doorstep, Ingulsrud could see "[a] few broken things on the floor." 1 RP at 139. Although Ingulsrud's testimony regarding the timeline was not consistent with Christopher's, the jury could have found credible Ingulsrud's account of his contact with Whittles. Because we view the evidence in the light most favorable to the jury's verdict and circumstantial evidence is as reliable as direct evidence, the evidence presented here was sufficient to establish beyond a reasonable doubt the elements of first degree malicious mischief. *Salinas*, 119 Wn.2d at 201; *Delmarter*, 94 Wn.2d at 638.

INEFFECTIVE ASSISTANCE OF COUNSEL

Whittles argues that he received ineffective assistance of counsel because his trial counsel did not request a mistrial when Christopher referenced Whittles's prior involvement with law enforcement. The State argues that (1) trial counsel's performance was not deficient because not objecting to Christopher's passing comment was a legitimate trial tactic, and (2) Whittles cannot show prejudice because Christopher's comments were not grounds for a mistrial. We agree with the State.

To prevail on an ineffective assistance of counsel claim, Whittles must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To establish prejudice, a defendant must show a reasonable probability that the outcome would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d

6

222, 226, 743 P.2d 816 (1987). If an ineffective assistance of counsel claim fails to support a finding of either deficiency or prejudice, it fails. *Strickland*, 466 U.S. at 697.

Whittles's first claim is that trial counsel was ineffective by failing to object when Christopher testified that she did not call the police because she did not want to "involve [Whittles] in another police incident." 1 RP at 85. When an ineffective assistance of counsel claim is based on failure to object, the defendant must show that (1) failure to object fell below an objective standard of reasonableness, (2) the proposed objection would have been sustained, and (3) the result of the trial would have differed. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). If trial counsel's failure to object "'can be characterized as *legitimate* trial strategy or tactics,'" the failure to object is not grounds for an ineffective assistance of counsel claim. *Davis*, 152 Wn.2d at 714 (quoting *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)). Failure to object in order to prevent unnecessarily emphasizing testimony is considered a legitimate trial tactic. *Davis*, 152 Wn.2d at 714 (citing *State v. Donald*, 68 Wn. App. 543, 551, 844 P.2d 447, *review denied*, 121 Wn.2d 1024 (1993)).

Here, Whittles's trial counsel did not object to Christopher's comment that she did not report Whittles pounding on her car because she still had enough respect for him that she did not want to involve him in "another police incident." 1 RP at 85. But it is reasonable to characterize trial counsel's failure to object as a legitimate trial tactic. Christopher's comment was brief, made in passing, and did not offer any specifics about the other incident that would allow the jury to infer that Whittles had a propensity to commit malicious mischief. It is likely that trial counsel decided not to object because he did not want to emphasize Christopher's comment to the jury or minimize the delayed reporting evidence. Accordingly, trial counsel's performance was not deficient and Whittles's first claim fails. *Davis*, 152 Wn.2d at 714.

Whittles also argues that he received ineffective assistance of counsel because trial counsel failed to request a mistrial after Christopher testified that she knew Whittles would be out of the house because he had an appointment with Houser.[2] To prevail on this claim, Whittles must show that had trial counsel requested a mistrial, the outcome would have been different. *Thomas*, 109 Wn.2d at 226. In other words, Whittles would have to show that the trial court would have granted the motion for a mistrial. A trial court should grant a mistrial when the defendant has suffered prejudice such that nothing short of a new trial will ensure that defendant a fair trial. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002) (quoting *State v. Kwan Fai Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986). Whether an inadvertent remark justifies a mistrial depends on (1) the seriousness of the irregularity; (2) whether the statement in question was cumulative of other evidence; and (3) whether the irregularity could effectively be cured by an instruction to disregard the remark, an instruction the jury is presumed to follow. *State v. Weber*, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983).

Christopher testified that she did not return home until 2 PM because she knew that Whittles had an appointment with Houser and Whittles would not be at the house. Whittles contends that this comment is so prejudicial that the trial court would have granted a motion for a mistrial. As the State correctly points out, current precedent is contrary to Whittles's assertion.

In *State v. Condon*, 72 Wn. App. 638, 649-50, 865 P.2d 521 (1993), *review denied*, 123 Wn.2d 1031 (1994), a witness made a reference about Condon having been in jail, but the court observed that "although the remarks may have had the potential for prejudice, they were not so

---

[2] In his appeal brief, Whittles relies on facts outside the record to support his argument. Specifically, Whittles repeatedly refers to Houser as the public defender and states that the witness referred to Whittles's meeting with the public defender rather than Whittles's meeting with Houser. While we disapprove of relying on assumptions of facts outside the record, in this instance the misstatements of the record are not sufficiently severe as to warrant sanctions.

8

serious as to warrant a mistrial." Similarly, Christopher's ambiguous reference to Whittles's meeting with Houser—whom she did not identify as a public defender—was not so serious that it would require a mistrial. Therefore, Whittles cannot show prejudice resulting from trial counsel's failure to move for a mistrial and his ineffective assistance of counsel claim fails. *Thomas*, 109 Wn.2d at 226.

Furthermore, defense counsel objected to the comment and the objection was sustained. The trial court could have instructed the jury to disregard the comment and there would be no grounds for a mistrial. We assume the jury follows the trial court's instructions. *Weber*, 99 Wn.2d at 166. However, the decision not to request that the trial court instruct the jury to disregard an inadvertent comment is a legitimate trial tactic because it prevents calling unnecessary jury attention to the comment. Accordingly, Christopher's comment was not sufficient grounds for a mistrial because the error could have been cured with an instruction to the jury. *Weber*, 99 Wn.2d at 166; *Condon*, 73 Wn. App. at 250. And defense counsel's decision not to request an instruction was a legitimate trial tactic and not deficient performance.

LEGAL FINANCIAL OBLIGATIONS

Whittles argues that the trial court improperly imposed two legal financial obligations in Whittles's judgment and sentence: a contribution to the Kitsap County Special Assault Unit and a contribution to the Kitsap County's Expert Witness Fund. Whittles argues that the trial court erred by imposing these legal financial obligations because they are not authorized by statute. The State concedes that the legal financial obligations are not authorized by statute and that the trial court exceeded its authority by imposing them. We accept the State's concession and remand to the trial court to correct the judgment and sentence by striking the improper legal financial obligations.

No. 43127-1-II

The trial court's authority to impose costs and fees is statutory. *See State v. Hathaway*, 161 Wn. App. 634, 652-53, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011); RCW 10.01.160. Under RCW 10.01.160(2) "costs shall be limited to expenses specially incurred by the state in prosecuting the defendant." Here, the trial court imposed costs for the Kitsap County Special Assault Unit and Kitsap County's Expert Witness Fund. Whittles's case did not involve an assault nor did it require the testimony of an expert witness. Therefore, the trial court exceeded its statutory authority to impose costs by imposing costs that were not incurred by the State in Whittles's prosecution. The State's concession is proper and we remand for the trial court to correct the judgment and sentence by striking the improper legal financial obligations from the judgment and sentence. We affirm Whittles's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

FEARING, J.

10