# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                    Respondent,

      v.

SVEIN ARVE VIK,

                    Appellant.

No. 70517-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 8, 2014

PER CURIAM – Svein Vik appeals his conviction for first degree criminal trespass. He contends there was insufficient evidence that he acted as an accomplice. We disagree and affirm.

Based on allegations that Vik assisted in the burglary of a youth center under construction on the Tulalip Tribe Reservation, the State charged him with second degree burglary. At trial, Detective James Williams of the Tulalip Tribal Police Department testified that he investigated a report that someone took items from the youth center, including surveillance cameras, a job box, and electrical wire that appeared to have been cut with heavy duty wire cutters. A padlock on the gate to the center appeared to have been cut with bolt cutters. Security cameras showed a van on the youth center premises on December 25, 2011. Police traced the van's license plate to Vik.

On December 27, 2011, Detective Williams spoke to Vik at his home. Vik initially said he had been at home on December 25th and "had not gone anywhere that whole entire day." When confronted with video evidence of his van at a casino, Vik remembered going to the casino with his friend Damian Irwin. He admitted dropping Irwin off at the youth center after Irwin said "he

wanted to pick some stuff up." Vik knew at the time that Irwin "was into doing burglaries and selling those items for profit."

Detective Williams next spoke with Vladimir Klapenchuck about the burglary. Klapenchuck admitted going with Irwin and Vik to the youth center in Vik's van. Klapenchuck said that he drove the van and that Vik went outside the van with Irwin "for a little bit" at the youth center. Klapenchuck and Vik drove away for a short time and then returned to the youth center to pick up Irwin.

Detective Williams also interviewed Irwin, who admitted going to the youth center with Klapenchuck and Vik on Christmas day. Irwin returned the next day with someone else and stole items he had identified the day before.

Detective Williams arrested Vik and obtained his consent to search his van. Police found a pair of bolt cutters, wire cutters, sinks, wall board, and sheetrock. Detective Williams testified that the bolt and wire cutters could have been used to cut the padlock and wire at the youth center.

Vik testified that Irwin talked Klapenchuck into driving them from the casino toward the water in Vik's van. Vik was "waking up [and] nodding off" during the drive. When they arrived at the youth center, Vik and Klapenchuck initially stayed in the van while Irwin went inside. After a while, they began honking the horn and calling Irwin's name. When Irwin appeared, Vik left the van, ran across the street, and told Irwin, "Okay, we're leaving you. We don't want to wait anymore." Irwin responded that he would be there in two minutes. But rather than return to the van, he turned around and walked back toward the youth center. Vik and Klapenchuck left the youth center without Irwin, but returned a

short time later. After seeing Irwin on the inside of the fenced area, Vik jumped out of the van, ran across the street and told Irwin, "We're leaving." Irwin returned to the van and the three men drove to Vik's house.

Vik testified that he did not know Irwin intended to commit a crime at the youth center until after Irwin returned to the van. He also testified that the materials and tools in his van were from a remodel job he had in Seattle.

The jury found Vik guilty of the lesser included offense of first degree criminal trespass. Vik appeals.

DECISION

Vik challenges the sufficiency of the evidence supporting his conviction. Evidence is sufficient if, when viewed in a light most favorable to the State, it allows any rational trier of fact to find the elements of the offense proved beyond a reasonable doubt.[1] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[2] Circumstantial evidence and direct evidence are equally reliable.[3] We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[4]

To convict Vik of first degree trespass under the instructions in this case, the jury had to find that he or an accomplice "knowingly entered or remained in a

---

[1] State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).
[2] Salinas, 119 Wn.2d at 201.
[3] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).
[4] State v. Walton, 64 Wn. App. 410, 415–16, 824 P.2d 533 (1992) (abrogated on other grounds by In re Cross, No. 79761-7, 2014 WL 2892418 (Wash. June 26, 2014)).

building" and "knew that the entry or remaining was unlawful."[5] The court also instructed the jury that a "building" includes a fenced area, and that a person is an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, her or she aids another person in committing the crime. The instruction explained that "[t]he word aid means all assistance whether given by words, acts, encouragement, support, or presence," and that "a person who is present at the scene and ready to assist . . . is aiding in the commission of the crime."

Viewed in a light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that Vik knowingly aided Irwin's trespass on the youth center property. The youth center was under construction, fenced, and locked with a padlock. Vik knew before going with Irwin to the youth center on Christmas day that Irwin "was into doing burglaries" and wanted to go to the youth center to "pick some stuff up." Bolt cutters found in Vik's van could have been used to cut the padlock at the youth center. Irwin rode in Vik's van to the youth center. Vik waited for Irwin while he entered and remained in the fenced area, and then drove him home. Taken together, these facts support reasonable inferences that Vik knowingly facilitated the trespass by providing transportation to and from the youth center as well as tools to enter the fenced area.

Affirmed.

Trickey, J.

Cox, J.

_____

[5] CP 28.

4